# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:09CV008-RJC-DSC

| | |
|---|---|
| AMELIA RAVAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FOREST PHARMACEUTICALS, ) <br> INC., STEVE PATTERSON, ) <br> JOEL DUFFEY, and KEVIN ) <br> TAYLOR, ) <br> ) <br> Defendants. ) <br> ) <br> _____ ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the "Defendants' Motion to Dismiss Counts III, V and Parts of I and VI" (document #9) filed February 4, 2009; and the parties's associated briefs and exhibits. (Documents ##10, 13, 14, and 18).

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and this Motion is now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendants' Motion to Dismiss be <u>granted in part</u> and <u>denied in part</u>.

At the outset, the undersigned notes that Plaintiff consents to the relief Defendants seek concerning Counts I and VI, that is, dismissal of Count I (North Carolina public policy claim) other than the part alleging wrongful discharge, and dismissal of the part of Count VI (Family Medical Leave Act) that alleges interference or failure to restore. Plaintiff's "Memorandum in Opposition ..." at 3 (document #13). Accordingly, the undersigned respectfully recommends that Defendants'

Motion to Dismiss be <u>granted</u> as to those claims.. The remaining issues are the Defendants' Motion to Dismiss Count III (Constructive Discharge) and Count V (Americans with Disabilities Act), as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

This is an action seeking damages and injunctive relief for gender, age, and disability based discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, <u>et. seq.</u>, the Age Discrimination in Employment Act ("the ADEA"), 29. U.S.C. § 621 et. seq., the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12112 et. seq., the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.; and state public policy, as well as state common law claims.

Accepting the allegations of the Complaint as true, as we must at this early stage in the proceeding, Plaintiff was employed by Defendant Forest from January 24, 2000 until July 21, 2007. Between 2003 and 2005, the Plaintiff was sexually harassed by two of her male co-workers, Defendants Duffey and Taylor. Plaintiff considered these Defendants' behavior to be "belittling, degrading, and humiliating," creating "an intolerable, hostile, and abusive working environment," that substantially interfered with Plaintiff's ability to perform her duties effectively.

On November 11, 2005, Plaintiff informed Defendant Patterson, her direct supervisor (and the direct supervisor of Defendants Duffey and Taylor), of the ongoing sexual harassment. Plaintiff alleges that rather than properly investigate her charges, Defendant Patterson began a campaign of retaliation as well as gender and age discrimination culminating in her termination. Plaintiff further alleges that as a result of Defendant Patterson's retaliatory actions, she suffered numerous anxiety

attacks, and was diagnosed with anxiety disorder and depression. Plaintiff had to take repeated FMLA leave, and was finally unable to return to work.

On February 14, 2006, Plaintiff wrote a letter to Derek Jackson, Defendant Forest's Manager of Field Sales Human Resources, informing him of the retaliation by Defendant Patterson and providing details of Patterson's actions during their November 15th – 16th field ride. On March 23, 2006, Jackson wrote Plaintiff a letter informing her that he had investigated her allegations against Patterson and that it was his conclusion that she had "misinterpreted" Patterson's comments to her.

On July 21, 2007, Defendant Forest terminated the Plaintiff's employment, citing her inability to return to work.

On August 8, 2007, Plaintiff filed her first administrative "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff checked the boxes indicating that she was seeking redress for age and disability discrimination, as well as for retaliation. In her narrative, Plaintiff also indicated that she had been "sexually harassed," and stated she was proceeding under Title VII, the ADEA, and the ADA. Plaintiff also wrote that as a result of the treatment she received, she suffered anxiety and panic attacks which caused her to miss work and that she had been terminated while she was on doctor-recommended FMLA leave. Most importantly, Plaintiff stated that Defendants' harassment began in November 2005, and continued through her termination on July 21, 2007. She alleged that she was given poor performance reviews and placed on probation. She further alleged that Defendant Patterson "screamed" at her, told her that he "loved to ... get rid of" female employees, and called her a "pig," a "worthless ... horrible" person, and a "trouble-maker."

On January 15, 2008, Plaintiff filed a second administrative charge with the EEOC in which

she alleged gender discrimination.

Sometime in late 2008, Plaintiff filed her Complaint in the Superior Court of Mecklenburg County, North Carolina, which as amended on December 9, 2008, states ten claims : wrongful discharge under North Carolina public policy (Count I), sexual harassment and retaliatory discharge under Title VII (Count II), constructive discharge, pled in alternative under North Carolina public policy and Title VII (Count III), age discrimination under the ADEA (Count IV), disability discrimination under the ADA (Count V), a claim under the FMLA (Count VI), battery (Count VII), intentional infliction of emotional distress (Count VIII), negligent supervision and retention, (Count IX), and negligent infliction of emotional distress (Count X).

On January 8, 2009, Defendants removed the state court action to this Court, alleging federal question jurisdiction. Removal has not been challenged and appears to be proper.

On February 4, 2009, the Defendants filed the subject "Motion to Dismiss Counts III, V and Parts of I and VI," which has been fully briefed and is, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIM

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

As a general rule, a plaintiff's complaint need only provide a short statement in plain English

of the legal claim showing that the pleader is entitled to relief that is also sufficient to provide the defendant with "fair notice" of the claim and its basis. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss, however, the pleader must show through her allegations that it is plausible, rather than merely speculative, that she is entitled to relief. Twombly, 550 U.S. at 555-56. A complaint must do more than merely "avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming the factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

### B. Constructive Discharge Claim (Count III)

#### 1. North Carolina Public Policy

As noted above, Plaintiff has pled her constructive discharge claim in the alternative to her public policy (Count I) and Title VII (Count II) wrongful discharge claims. Concerning her public policy constructive discharge claim, the NCEEPA provides that:

> [i]t is the public policy of this State to protect and safeguard the right and

> opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2.

North Carolina courts have recognized a private right of action under this "public policy" only where the alleged discrimination resulted in termination. See, e.g., Whitt v. Harris Teeter, Inc., 359 N.C. 625, 614 S.E.2d 531 (2005) (refusing to recognize public policy claims for constructive discharge, hostile work environment, or retaliation); Beck v. City of Durham, 154 N.C. App. 221, 231, 573 S.E.2d 183, 190 (2002) (affirming dismissal of constructive discharge claim); and Graham v. Hardee's Food Sys., 121 N.C. App. 382, 385, 465 S.E.2d 558, 560 (1996) (affirming summary judgment on constructive discharge claim).

Federal courts considering this issue have consistently refused to recognize a North Carolina state public policy claim unless the plaintiff was wrongfully terminated. See, e.g., Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000) (NCEEPA's public policy does not allow a claim for sexual harassment in the absence of termination); Hughes v. Bedsole, 48 F.3d 1376, 1383-84 (4th Cir.1995) (limiting North Carolina public policy claim to wrongful discharge); McFadden v. Trend Community Health Servs., 114 F. Supp. 2d 427, 430 (W.D.N.C. 2000) (North Carolina law does not provide employee private cause of action for constructive discharge); Cox v. Indian Head Industries, Inc., 123 F. Supp. 2d 892, 900 (W.D.N.C. 1999) (plaintiff's sexual discrimination claim, as a statutory claim under NCEEPA, not viable); Ridenhour v. Concord Screen Printers, Inc., 40 F. Supp. 2d 744, 746 (M.D.N.C. 1999) (dismissing plaintiff's sexual harassment claim under N. C. Gen. Stat. § 143-422.2); and Mullis v. Mechanics & Farmers Bank, 994 F. Supp. 680, 687 (M.D.N.C. 1997) ( "[a]bsent a clear indication from the courts or legislature of North Carolina that a private right of action does

6

exist under the NCEEPA, it would be inappropriate for a federal court to create a private right of action under the NCEEPA, and this court declines to do so").

The Plaintiff cites a recent decision issued by the District Judge to whom this case is assigned (the Honorable Robert J. Conrad, Jr.) for the proposition that her public policy constructive discharge claim may survive dismissal. See Hughes v. Hewlitt Packard Corp., 2008 WL 4372794 (W.D.N.C. 2008) (unpublished). To the contrary, Judge Conrad stated that "the issue of whether the public policy exception includes claims of <u>constructive</u> discharge is irrelevant here because the plaintiff was actually discharged." Id. at 2 (emphasis in original). Rather, Judge Conrad rejected the Hughes defendants' contention that in addition to requiring actual discharge, a viable public policy claim also required that a plaintiff prove "she was terminated for refusing to follow her employer's demands that she violate public policy." Id. at 4.

Applying these clear principles, to the extent that the Plaintiff's constructive discharge claim arises under state public policy, it must fail and the undersigned respectfully recommends that the Defendants' Motion to Dismiss be <u>granted</u> in that regard.

**2. Title VII**

Defendants contend that the Plaintiff failed to exhaust her administrative remedies prior to filing her constructive discharge claim because the words "constructive discharge" do not appear in either of the administrative charges she filed with the EEOC.

It is well recognized that prior to filing suit under Title VII, a plaintiff must exhaust all administrative remedies by filing a charge with the EEOC. Bryant v. Bell Atlantic Md., Inc., 288 F .3d 124, 132 (4th Cir. 2002). The purpose of exhausting administrative remedies under Title VII is to put an employer on notice of the charge, to permit the EEOC to investigate the charge, and to

permit the parties to seek a resolution of the dispute without litigation. See, e.g., Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005); and EEOC v. American Nat'l Bank, 652 F.2d 1176, 1186 (4th Cir.1981).

It is equally well established that the scope of the lawsuit allegations may be broader than the language of the EEOC charge. Miles, 429 F.3d at 491. Indeed, "an administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." Id., quoting Bryant, 288 F.3d at 132. In other words, "[i]f a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." Id., quoting Smith v. First Union Nat'l Bank, 202 F.3d 234, 247-48 (4th Cir.2000). Accord Brown v. The Inst. for Family Centered Services, Inc., 394 F.Supp.2d 724, 728 (M.D.N.C. 2005) (Title VII plaintiff may maintain "those discrimination claims stated in the initial [EEOC] charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint"), quoting Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996).

In order to prevail on a constructive discharge claim under Title VII, a plaintiff must allege and establish (1) the deliberateness of the defendant's actions, including an improper motivation (the plaintiff's gender, age, race ), and (2) the objective intolerability of her working conditions. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 186-87 (2004), citing Matvia v. Bald Head Island Mgmt., Inc., 259 F.3d 261, 273 (4th Cir.2001).

Applying these principles to the record in this case, the undersigned concludes that the

administrative charges filed by the Plaintiff put the EEOC and the Defendants on reasonable notice that if the Plaintiff's termination failed to rise to the level of actionable wrongful discharge, the Defendants still might be liable for intentionally driving the Plaintiff from her employment. Her EEOC charges contain allegations that Defendant Patterson intended to "get rid of" the Plaintiff and that Defendants engaged in a pattern of behavior over nearly two years that, at this early stage of the lawsuit, appears to be sufficiently intolerable to permit the Plaintiff to conduct discovery on that claim.

Plaintiff's constructive discharge claim is "reasonably related" to the allegations contained in the EEOC charges in that the claim could "be expected to follow from a reasonable administrative investigation" of those charges. <u>Miles</u>, 429 F.3d at 491. Accordingly, the Plaintiff "may advance [that] claim[] in her subsequent civil suit." <u>Id.</u> The undersigned respectfully recommends that the Defendants' Motion to Dismiss the portion of the Plaintiff's constructive discharge claim that arises under Title VII be <u>denied</u>.

### C. <u>Americans with Disabilities Act Claim (Count V)</u>

Finally, the Defendants contend that although Plaintiff's initial EEOC charge and Amended Complaint included allegations that the Plaintiff was discriminated against on the basis of a disability, that she was proceeding under the ADA, and that as a result of the Defendants' behavior, she suffered anxiety and panic attacks which caused her to miss work, she nevertheless has failed to sufficiently identify her alleged disability. The undersigned concludes to the contrary that the Plaintiff did exhaust her administrative remedies as to that claim, and that her ADA claim is "reasonably related" to the allegations contained in EEOC charges in that the claim could "be expected to follow from a reasonable administrative investigation" of those charges. <u>Miles</u>, 429 F.3d at 491. Similarly, the

Amended Complaint contains sufficient allegations to support a plausible ADA claim that the Plaintiff became disabled from anxiety and panic attacks that caused her to be unable to work, which is a sufficient statement of entitlement to relief to survive the Defendants' Rule 12(b)(6) Motion. Twombly, 550 U.S. at 555-56. Accordingly, the undersigned will respectfully recommend that the Defendants Motion to Dismiss the Plaintiff's ADA claim be denied as well.

### III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "Defendants' Motion to Dismiss Counts III, V and Parts of I and VI" (document #9) be **GRANTED IN PART** and **DENIED IN PART**, that is, **GRANTED** as to Count I (North Carolina public policy claim) other than the portion alleging wrongful discharge; Count III (Constructive Discharge) to the extent that the claim arises under North Carolina public policy; and the portion of Count VI (Family Medical Leave Act) that alleges interference or failure to restore, and **DENIED** in all other respects.

### IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also

preclude the parties from raising such objections on appeal.  <u>Diamond</u>, 416 F.3d at 316; <u>Wells</u>, 109 F.3d at 201; <u>Page</u>, 337 F.3d at 416 n.3; <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 845-46 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr.</u>

**SO RECOMMENDED AND ORDERED**.

Signed: April 15, 2009

*[signature]*

David S. Cayer
United States Magistrate Judge